# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

EARL L. MILLER,

        Plaintiff,

        v.                                Case No. 09-C-1027

MICHAEL THURMER, WARDEN MICHAEL MEISNER,
REX SMITH, RICK RAEMSICH, COREY F. ODOM, JR.,
JOSE CARRILLO, LYLE A. BALISTRERI,
BILL G. SMITH, DEBRA J. PICKETT,
HOWARD TEBEEST, and ANN BAILEY,

        Defendants.

---

ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA
PAUPERIS (DOC. #2) AND DISMISSING CASE WITHOUT PREJUDICE FOR FAILURE
TO EXHAUST ADMINISTRATIVE REMEDIES

        The plaintiff, Earl L. Miller, who is incarcerated at the Waupun Correctional

Institution, filed this pro se action under 42 U.S.C. § 1983. The matter is before the court

on Miller's petition to proceed *in forma pauperis* following payment of the initial partial filing

fee.

        The court is required to screen complaints brought by prisoners seeking relief

against a governmental entity or officer or employee of a governmental entity. 28 U.S.C.

§ 1915A(a). A complaint or portion thereof must be dismissed if the prisoner has raised

claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may

be granted, or it seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

        A claim is legally frivolous when it lacks an arguable basis in law or in fact.

*Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325

(1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). Therefore, the court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more

2

than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

According to the complaint, Miller was incarcerated at Waupun Correctional Institution (WCI) at all times relevant. The defendants are: WCI Warden Michael Thurmer; Deputy Warden Michael Meisner; Correctional Office Rex Smith; Division of Corrections Board Members Rick Raemisch, Corey F. Odom, Jr., Jose Carrillo, Lyle A. Balistreri, Bill G. Smith, and Debra J. Pickett; Howard TeBeest, Supervisor of MF-1 facility; and Ann Bailey, Safety Inspector for MF-1 facility.

Miller was employed by Badger State Industries, located within WCI, beginning June 14, 2004, where he worked in the metal furniture-1 (MF-1) building. Another inmate gave Miller cursory instructions on how to run a brake press, but no safety instructions were given to him by a supervisory member of Badger State Industries. Miller was supplied with a pair of steel-toed boots to wear while working, but the boots were too

3

wide for his feet and did not provide him with adequate feeling regarding placement of his feet or awareness of when the boot was in unintended contact with items on the floor.

On September 14, 2007, at approximately 1 p.m., Miller was working at the brake press machine when his boot inadvertently came into contact with the floor activation button, causing the press to crush his left wrist. The brake press machine did not have a safety mechanism on its floor activation pedal. After Miller realized what happened, he reversed the machine half cycle by pushing the emergency button. He asked Officer Dan Spittle for help and to call the Health Services Unit (HSU). Officer Spittle called Sergeant David Ruples and asked him to call the medical unit while Spittle tended Miller's injuries. Sergeant Ruples called defendant Lieutenant Rex Smith and asked him several times to call for an ambulance.

At approximately 1:30 p.m., Nurse Francis Jennings arrived at the MF-1 building and called immediately for the HSU doctor, Dr. Steven Sumnicht, who asked Lt. Smith to call for the rescue squad. The rescue squad was called at about 1:30 p.m.

An ambulance arrived at 1:55 p.m. At 2:20 p.m., Miller was transported to Waupun Memorial Hospital where Dr. Gregory Schultz examined him and, due to the severity of the injuries, requested emergency Med Flight to the UW Hospital in Madison, Wisconsin. Miller arrived at UW Hospital at about 3:30 p.m., x-rays were taken, and Miller underwent a twelve-hour surgery where "left ulnar artery reanastomisis with vein interposition graft, multiple extensor and flexor tendon repairs, never repair, and pinning of the capitate bone" were performed. (Compl. Exh., D.)

On September 15, 2007, Miller was discharged from the hospital and returned to WCI. At about 2:00 a.m., on September 18, 2007, Miller stopped third shift Sergeant

4

Lieber and asked to see the medical unit because he was "bleeding out." (Compl. at 7 ¶ 17.) He was taken to Waupun Memorial Hospital and from there, returned to UW Hospital where, following a series of tests and x-rays were conducted, it was determined that his left hand was nonviable and amputation was recommended. On September 24, 2007, Miller returned to UW Hospital and his left hand was amputated.

Miller claims that the defendants are liable under the Eighth Amendment for failure to protect his personal health and safety by deliberately removing the safety mechanism on the equipment he was forced to work with. He further claims that the defendants' deliberate indifference, while under their care and supervision, led to the amputation of his hand. In addition, Miller claims that the defendants are liable under the Wisconsin Safe Workplace Statute, Wisconsin Statute § 101.11(1)(2)(a). He seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

### Exhaustion of Administrative Remedies

Miller alleges that on December 21, 2007, he filed an inmate complaint based on his September 14 injury, but it was returned for containing multiple issues. (Compl., Exh. L.) On December 26, 2007, he resubmitted his inmate complaint (Exhs. K, M), but on January 3, 2008, it was rejected as untimely (Exh. N.). On January 5, 2008, Miller filed a Request for Review of Rejected Complaint, which was never answered.

Miller attaches documents to his complaint including his December 26, 2007, inmate complaint and the ICE Rejection of the inmate complaint. The ICE Rejection of Complaint Number WCI-2007-37935 indicates that Miller's complaint was rejected as untimely because it was received beyond the fourteen calendar day limit, and includes the following comments:

5

Inmate Miller files this complaint in regards to an accident that happened in BSI metal furniture on 9/14/07. The complaint was first received in the complaint department on 12/21/07, but was returned for containing multiple issues. The resubmission was received on 12/26/07. Inmate is requesting an exception on the time limits due to medical reasons. He states that he has been under medical care, in the hospital, and under heavy doses of medication due to the accident occurring on 9/14/07.

I have contacted several WCI staff including BSI staff, HSM Schrubbe, and Business Office staff in regards to the request for a time limits extension. According to BSI staff interviewed, inmate Miller has been back to work since 10/31/07. I have found that he has ordered canteen, completed requests for postage and copies from the Library since the beginning of October. HSM Schrubbe verifies he has been under medical care and on pain medication, but he has been functioning in all other capacities in the institution, with the exception of being on sick cell until the end of October when he returned to work.

DOC 310.09(6) states that an inmate shall file a complaint within 14 calendar days after the occurrence giving rise to the complaint. It is well beyond the 14-day time limit to file a complaint with respect to an incident in September 2007. While it appears as the complainant may have originally needed some time extension, based on the above information it does not appear as he would have been inhibited this entire time.

The complaint is rejected as it fails to adhere to the stated filing requirement.

(Compl. Ex., N.)

The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that

[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

6

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 88, 126 S.Ct. 2378, 2384, 2387 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require").

Although a prisoner's failure to exhaust his administrative remedies is an affirmative defense that normally must be proven by the defendants, a district court may raise an affirmative defense on its own if it is clear from the face of the complaint and any documents attached to it that the defense applies. *Jones v. Bock*, 549 U.S. 199, 214-15 (2007); *see also Gleash v. Yuswak*, 308 F.3d 758, 760-61 (7th Cir. 2002) (holding that district court could dismiss a suit as frivolous based on an applicable affirmative defense even though the defendants had not yet been served with process); *Beanstalk Group Inc. v. AM General Corp.*, 283 F.3d 856, 858 (7th Cir. 2002) (documents attached to complaint become part of it for all purposes).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). The Wisconsin

7

Administrative Code provides that before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the Department of Corrections has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1).

To use the ICRS, an inmate must file a complaint with the inmate complaint examiner (ICE) within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) & 310.09(6). Complaints submitted later than 14 days after the event may be accepted for good cause. Wis. Admin. Code § DOC 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within 10 days following receipt of the recommendation. Wis. Admin. Code § DOC 310.12. Within 10 days after the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the corrections complaint examiner (CCE). Wis. Admin. Code § DOC 310.13(1). The CCE reviews the appeal and makes a recommendation to the secretary of the Department of Corrections. Wis. Admin. Code § DOC 310.13(6). The secretary may accept, adopt, or reject the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code § DOC 310.14(2).

Miller's complaint and attachments demonstrate that his inmate complaint was rejected as untimely filed. Hence, he has failed to exhaust his administrative remedies

8

because the document was submitted more than 14 days after his injury and his return to work.  *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).  Now, therefore,

**IT IS ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action be **DISMISSED** without prejudice for failure to exhaust administrative remedies.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $271.46 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2).  The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Dated at Milwaukee, Wisconsin, this 26th day of March, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE

9